UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CSNK WORKING CAPITAL FINANCE CORP., <br><br> Plaintiff, <br><br> v. <br><br> BAXTER, BAILEY & ASSOCIATES, INC., <br><br> Defendant. | Case No. 5:16-cv-04234-EJD <br><br> **ORDER DENYING PLAINTIFF'S EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** <br><br> Re: Dkt. No. 11 |

Plaintiff CSNK Working Capital Finance Corp., which does business as Bay View Funding ("Bay View"), is a wholly-owned subsidiary of Heritage Bank of Commerce ("Heritage") and a "factor," or a "commercial finance company that provides account receivable financing to businesses that sell their products to other businesses." Marble Bridge Funding Grp. V. Liquid Capital Exchange, Inc., No. 5:15-cv-00177-EJD, 2015 U.S. Dist. LEXIS 130518, at *1, 2015 WL 5654840 (N.D. Cal. Sept. 25, 2015).

On September 25, 2015, Heritage entered into a Loan and Security Agreement with Network F.O.B. ("Network"), a freight forwarder, through which Heritage agreed to extend credit of approximately $5.8 million to Network and, in return, Network gave Heritage a first position security interest in its assets, including Network's accounts receivable. After a series of defaults, Heritage and Network entered into a Forbearance Agreement and Factoring Agreement which converted the loan into a factoring facility that Bay View would service and manage, and Network's customers were instructed to make payment consistent with the agreement. On May 24, 2016, Heritage assigned of all its rights, title and interest in Network's indebtedness, including

1

Case No.: 5:16-cv-04234-EJD
ORDER DENYING PLAINTIFF'S EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

its security interest in Network's assets, to Bay View.

As of July 27, 2016, Network had an outstanding accounts receivable of approximately $4.49 million. Bay View, however, was not the only party interested in Network's accounts. According to Bay View, Defendant Baxter, Bailey & Associates, Inc. ("Baxter Bailey"), a collection agency purportedly holding $1.4 million in unpaid claims against Network, commenced efforts to collect from Network's debtors in or about July, 2016. To that end, Bay View alleges that the president of Baxter Bailey emailed Network employees "threatening to demand direct payment from Network's customers" and sent correspondence to Networks debtors "threatening them with double-liability" if payments are made to Bay View.

Bay View commenced the instant action against Baxter Bailey in this court on July 27, 2016, for declaratory and injunctive relief, intentional interference with contractual relations, and accounting. In essence, Bay View alleges in the Complaint that Baxter Bailey's interest in Network's accounts receivable is inferior to the first-position security interest that Bay View received from Heritage, and that Baxter Bailey has interfered with Bay View's contractual interest by contacting Network's debtors and causing them to withhold payment.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332. Presently before the court is Bay View's ex parte application for a temporary restraining order ("TRO") through which Bay View seeks to enjoin Baxter Bailey from taking action to collect from Network's debtors. Dkt. No. 11. Bay View also seeks an order requiring Baxter Bailey to account for payments received and remit all payment instruments to bay View.

This matter is suitable for decision without oral argument. Civ. L. R. 7-1(b). Having reviewed the relevant pleadings, the court finds, concludes and orders as follows:

1.  The standard for issuing a TRO is the same as that for the issuance of preliminary injunction. See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977). Thus, a TRO, like a preliminary injunction, is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. NRDC, Inc.,

2

Case No.: 5:16-cv-04234-EJD
ORDER DENYING PLAINTIFF'S EX PARTE MOTION FOR A TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY
INJUNCTION

555 U.S. 7, 22 (2008).

2. "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009). Temporary injunctive relief may also issue if "serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor," thereby allowing preservation of the status quo where complex legal questions require further inspection or deliberation. Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1049 (9th Cir. 2010).

3. As an initial matter, an ex parte TRO application must satisfy Federal Rule of Civil Procedure 65(b)(1), which demands notice to the opposing party or parties. Bay View avers that it notified Baxter Bailey of its intent to seek a TRO on August 9, 2016, and for that reason is not requesting that relief be issued without notice. The court therefore proceeds to an analysis of the Winter factors, upon which Bay View relies.

4. The second Winter factor - which is arguably the "single most important prerequisite for the issuance of a preliminary injunction" (Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) - requires the moving plaintiff "to demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter, 555 U.S. at 22 (emphasis preserved). An injunction ordered on any lesser showing is "inconsistent" with the "characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id.

5. In assessing whether Bay View has demonstrated that it is likely to suffer irreparable harm in the absence of a TRO, the court is mindful that it must make a "clear showing of irreparable harm." Garcia v. Google, 786 F.3d 733, 746 (9th Cir. 2015). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). Indeed, "[a] plaintiff

must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." Id. "Subjective apprehensions and unsupported predictions of revenue loss are not sufficient to satisfy a plaintiff's burden of demonstrating an immediate threat of irreparable harm." Id. at 675-76.

6.  Moreover, alleged harms that are ultimately compensable by a damages award are not sufficiently irreparable. L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980); Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 595 (1952) ("A plaintiff is not entitled to an injunction if money damages would fairly compensate him for any wrong he may have suffered."). In other words, "purely monetary injury is compensable, and thus not irreparable." Colorado River Indian Tribes v. Town of Parker, 776 F.2d 846, 851 (9th Cir. 1985). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Id. at 850 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1974)).

7.  Here, Bay View argues that in the absence of injunctive relief, "Baxter Bailey will continue its attempts to divert and dissipate Network's Accounts and the payments thereon and will leave no recourse even after monetary damages are awarded in Bay View's favor." But even if the former portion of this statement ultimately proves true, the court is not convinced the latter portion is an accurate representation of what is or is not recoverable in this case. Contrary to Bay View's commentary on the topic, any payments made by Network's debtors to Baxter Bailey instead of Bay View would be compensable by a damages award if Bay View prevails on its claim for intentional interference with contractual relations. See Sole Energy Co. v. Petrominerals Corp., 128 Cal. App. 4th 212, 232 (2005) (holding that the measure of damages for intentional interference with contractual relations is an amount that will reasonably compensate a plaintiff for all loss or harm caused by defendant's conduct, including the financial loss of the benefits of the contract or the prospective economic relationship).

8.  Bay View also argues that, in its experience, account debtors will withhold

payment when faced with conflicting payment demands and may prioritize other payments over its obligations to Network.  Bay View further suggests that it "will be forced to file a multiplicity of suits throughout the country for it to recover from the account debtors directly; therefore, monetary damages are insufficient."  These statements, however, merely describe possibilities; they do not constitute a "clear showing" that a non-speculative, imminent injury is likely to occur. See Winter, 555 U.S. at 22 (rejecting a "possibility" standard in the context of injunctive relief as "too lenient").   The Second Circuit case cited by Plaintiff, Savoie v. Merchants Bank, 84 F.3d 52 (1996), is factually distinguishable and does not address the exact issue presented here.[1]

9.	Finally, the court rejects Bay View's argument that it cannot calculate its monetary damages simply because assessing the amount involves "hundreds of customers owing relatively small amounts," who may not voluntarily notify Bay View of any payment made to Baxter Bailey. The injury alleged by Bay View in this case is monetary in nature, as opposed to those "intangible injuries, such as damage to ongoing recruitment efforts and goodwill" that can support an irreparable injury finding.  Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991).  In short, Bay View does not explain why information concerning payments could not be obtained through discovery, or why determining the amount owed could not be calculated through a simple mathematical exercise once it has that information.

Based on the foregoing, the court concludes that Bay View has not made a clear showing of irreparable injury, and on that basis is not entitled to the extraordinary remedy it seeks. Accordingly, the ex parte application for a TRO and order to show cause re: preliminary

---

[1] In Savoie, the district court issued a preliminary injunction requiring the defendant bank to escrow $500,000 for an award of attorneys fees after the bank distributed the entirety of $9 million trust fund in contravention of a magistrate judge's report and recommendation. In reviewing the injunction, the Second Circuit Court of Appeals observed that, in light of the bank's distribution, "plaintiffs would have had to attempt to seek recovery from each of the hundreds of trust customers who received part of the $ 9 million payment" if they were awarded attorneys fees, and found "that such a recourse is so impractical as to be infeasible, and constitutes irreparable harm." Savoie is distinguishable because, in contrast to the *possibility* of having to recover from separate customers indicated by Bay View in this motion, the plaintiffs in Savoie were faced with the *likelihood* of having to do so, since the funds that were meant to be reserved for payment had, in fact, already been distributed.

5
Case No.: 5:16-cv-04234-EJD
ORDER DENYING PLAINTIFF'S EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

injunction (Dkt. No. 11) is DENIED.

**IT IS SO ORDERED.**

Dated:  August 19, 2016


EDWARD J. DAVILA
United States District Judge

6
Case No.: 5:16-cv-04234-EJD
ORDER DENYING PLAINTIFF'S EX PARTE MOTION FOR A TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY
INJUNCTION